**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    Plaintiff,<br><br>vs.<br><br>SWMW MANAGEMENT, INC.; BELL ROAD AUTOMALL, INC.; and BIG BELL 21 LLC, d/b/a BELL ROAD KIA,<br><br>    Defendants. | No. CV-08-0946-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Motion for Leave to Amend the Complaint of Plaintiff Equal Employment Opportunity Commission (Dkt. # 35) and the Cross-Motion to Dismiss and to Enforce Arbitration Agreements and Compel Arbitration of Defendants SWMW Management, Bell Road Automall, and Big Bell 21 (Dkt. # 45). For the reasons set forth below, the Court grants Plaintiff's motion and denies Defendants' motion.[1]

---

[1] Defendants have requested oral argument. (Dkt. # 45 at 1.) The request is denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991) (finding denial of a hearing not unfairly prejudicial where the party "had the opportunity to apprise the district court of any arguments it believed supported its position" by filing a memorandum of law and evidence).

**BACKGROUND**

On May 19, 2008, Plaintiff Equal Employment Opportunity Commission ("EEOC") brought an enforcement action, pursuant to § 706(f) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f), against Defendants SWMW Management, Bell Road Automall, and Big Bell 21. Plaintiff is the agency of the United States charged with administration and enforcement of Title VII. At all relevant times, Defendants were Arizona corporations doing business in the State of Arizona.

In the Complaint, Plaintiff alleges that Defendants engaged in unlawful employment practices in violation of §§ 703(a) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a), e-3(a). Specifically, Plaintiff alleges that Defendants engaged in the following unlawful practices: (1) harassment of former employee Mitchell Dupoux because of his race; (2) harassment of former employee Alicia Hartley and a class of female employees (including Melissa Nagel) because of their gender; (3) retaliation against former employee Brian Netzel, resulting in his constructive discharge, as a result of his opposition to unlawful employment practices; and (4) retaliation against former employee Alicia Hartley, resulting in her constructive discharge, as a result of her opposition to unlawful employment practices. (Dkt. # 1 ¶ 10-13.)

On February 6, 2009, after failing to acquire consent from Defendants to file an amended complaint, Plaintiff filed its Motion for Leave to Amend the Complaint. (Dkt. # 35.) On March 2, 2009, Defendants responded to Plaintiff's Motion and filed a Cross-Motion to Dismiss and to Enforce Arbitration Agreements and Compel Arbitration. (Dkt. # 45.) In their reply brief, however, Defendants "withdraw their request that the Court dismiss the action and instead move only that the EEOC enforcement action be stayed pending the conclusion of the arbitration of the employee[s'] individual claims." (Dkt. # 50 at 2 n.1.)

///

///

///

**DISCUSSION**

**I.      Plaintiff's Motion for Leave to Amend – Federal Rule of Civil Procedure 15(a)**

Plaintiff moves for leave to amend its Complaint to "(1) add a class claim of retaliation; and (2) enter a technical correction in line numbering." (Dkt. # 35 at 1.) Defendants oppose only the addition of the class retaliation claim to Plaintiff's complaint.

Federal Rule of Civil Procedure 15(a) states that leave to amend a complaint "shall be freely given when justice so requires." The Supreme Court has instructed that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In deciding Plaintiff's Motion, the Court "must be guided by the underlying purpose of Rule 15 – to facilitate decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (quotation and citation omitted). "Thus, Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." *Id.* (quotation omitted). This liberality "is not dependent on whether the amendment will add causes of action or parties." *DCD Programs, LTD. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

The Court may, however, deny a motion to amend if there is a showing of undue delay or bad faith on the part of the moving party, undue prejudice to the opposing party, or futility of the proposed amendment. *See Foman*, 371 U.S. at 182. Generally, however, "this determination should be performed with all inferences in favor of granting the motion." *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). Significantly, "[t]he party opposing amendment bears the burden of showing prejudice," futility, or one of the other permissible reasons for denying a motion to amend. *DCD Programs*, 833 F.2d at 187; *see Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988) (stating that leave to amend should be freely given unless the opposing party makes "an affirmative showing of either prejudice or bad faith").

Defendants make three arguments in opposition to Plaintiff's proposed amendment: (1) the proposed amendment is futile; (2) the proposed amendment will unduly prejudice Defendants; and (3) Plaintiff has engaged in undue delay in seeking the amendment. (Dkt. # 45 at 6-13.) The Court will address each argument in turn.

- 3 -

### A.     Futility of Plaintiff's Proposed Amendment

Defendants argue that Plaintiff's proposed amendment is futile because: (1) neither Ms. Nagel nor Ms. Blakley filed timely charges of discrimination, which is a prerequisite to filing a private lawsuit; and (2) the facts asserted in the proposed amended complaint do not constitute retaliation under Title VII. (Dkt. # 45 at 12.)

Initially, it is immaterial to this enforcement action that neither Ms. Nagel or Ms. Blakley timely filed charges with the EEOC sufficient to permit private suits against Defendants. It is undisputed that Mr. Netzel filed his EEOC charge on May 20, 2004, complaining of retaliation. Because the retaliatory conduct alleged with respect to Ms. Nagel and Ms. Blakley likewise occurred in mid-2004, the EEOC is not precluded from asserting those retaliation claims. *See Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 923 (9th Cir. 1982) (finding non-filing class members governed by the statute of limitations of the charging parties). Also, the EEOC is the only plaintiff in this action and it is not bound by the same filing prerequisites that are strictly imposed upon private parties. *See E.E.O.C. v. Waffle House*, 534 U.S. 279, 287-88, 297 (2002) (listing situations in which "the EEOC does not stand in the employee's shoes" and recognizing the distinction between an individual employee's private cause of action and the EEOC's enforcement role in securing relief for a group of individuals); *Occidental Life. Ins. Co. of Cal. v. E.E.O.C.*, 432 U.S. 355, 368 (1977) (holding that state statutes of limitations are not applicable to EEOC enforcement actions and stating that "the EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties; it is a federal administrative agency charged with the responsibility of investigating claims of employment discrimination and settling disputes"); *E.E.O.C. v. Gen. Elec. Co.*, 532 F.2d 359, 373 (4th Cir. 1976) ("It follows that the standing of the EEOC to sue under Title VII cannot be controlled or determined by the standing of the charging party to sue, limited as he is in rights to vindication of his own individual rights."); *E.E.O.C. v. Catholic Healthcare West*, 530 F. Supp. 2d 1096, 1107 (C.D. Cal. 2008) ("The EEOC may thus seek relief for . . . any other employees who may have been affected by Defendant's discriminatory policy even though they have not complied with the requirements

1 necessary to bring private actions on their own."); *E.E.O.C. v. Univ. of Phoenix, Inc.*, No.
2 CV-06-2303-PHX-MHM, 2008 WL 1971396, at *4 (D. Ariz. May 2, 2008) (holding that the
3 EEOC could seek victim-specific relief on claims that individual employees did not exhaust
4 by filing charges with the EEOC). Therefore, Defendants have not shown that Ms. Nagel's
5 and Ms. Blakley's failure to file timely charges with the EEOC would render Plaintiff's
6 proposed amendment futile.

7 Defendants also attempt to demonstrate futility by submitting evidence suggesting that
8 "there is no causal link between the protected activity and separation from employment with
9 Defendants." (Dkt. # 45 at 12-13.) Specifically, Defendants present evidence that Mr.
10 Netzel was not terminated, but rather that he voluntarily resigned, and that Mr. Dupoux
11 likewise voluntarily resigned, was rehired, and then was "terminated as a no-call, no-show
12 on June 1, 2005." (*Id.* at 12.) Plaintiff argues that the proposed amendment is not futile
13 because Defendants "essentially ask this Court to credit their version of the facts supported
14 solely by a declaration from Defendants' former owner." (Dkt. # 49 at 8.)

15 "[A] proposed amendment is futile only if no set of facts can be proved under the
16 amendment to the pleadings that would constitute a valid and sufficient claim or defense."
17 *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *see Foman*, 371 U.S. at 182
18 (stating that "[i]f the underlying facts or circumstances relied upon by a [movant] may be a
19 proper subject of relief, he ought to be afforded an opportunity to test his claim on the
20 merits"); *DCD Programs*, 833 F.2d at 186 (stating that "a motion to make an '[a]mendment
21 is to be liberally granted where from the underlying facts or circumstances, the plaintiff may
22 be able to state a claim'") (quoting *McCartin v. Norton*, 674 F.2d 1317, 1321 (9th Cir.
23 1982)).

24 Plaintiff's proposed amendment asserts that "Defendants have engaged in unlawful
25 retaliatory employment practices . . . [which] include subjecting Brian Netzel, Alicia Hartley,
26 Mitchell Dupoux, Melissa Nagel, Julie Blakley, and a class of employees to adverse terms,
27 conditions, and privileges of employment and threats of disciplinary action after they
28 expressed opposition to and made complaints about unlawful employment practices." (Dkt.

- 5 -

1  # 36 ¶ 14.) Defendants appear to contend that because they have some evidence which may
2  be probative of the reasons behind Mr. Netzel's and Mr. Dupoux's departure from
3  Defendants' employ, Plaintiff's assertion of a class retaliation claim, which includes these
4  two individuals, is futile. While the evidence may be relevant to whether Defendants
5  retaliated against Mr. Netzel or Mr. Dupoux, it is not relevant to the other proposed former
6  employees or to the class of unnamed former employees that Plaintiff seeks to include in its
7  amendment. In any event, the existence of this evidence is insufficient to allow the Court to
8  conclude that "no set of facts [could] be proved under the amendment to the pleadings that
9  would constitute a valid and sufficient claim." *Miller*, 845 F.2d at 214.

10  Defendants therefore have not demonstrated that Plaintiff's proposed class retaliation
11  claim would be futile.

12  **B.  Undue Prejudice**

13  Defendants argue that they "have been crippled in their ability to succeed on the
14  merits at trial" because "Defendants have been unable to locate key witnesses in this matter
15  and have had difficulty locating personnel records, as a number of records have been lost or
16  cannot be located due to the changes in corporate structure, the dissolution of the business
17  entities, and the turnover among employees whose job it was to maintain personnel records."
18  (Dkt. # 45 at 1, 9.)

19  In *Foman*, the Supreme Court made clear that the inquiry into prejudice when
20  considering a motion for leave to amend is limited to "prejudice to the opposing party *by*
21  *virtue of allowance of the amendment*." 371 U.S. at 182 (emphasis added). In attempting
22  to demonstrate this type of prejudice, Defendants provided the declaration of Robert
23  Alexander attesting that: (1) SWMW Management has been dissolved; (2) Bell Road
24  Automall no longer has any employees and will not employ anyone; (3) Big Bell 21 is
25  currently insolvent; (4) there has been substantial turnover of employees during the course
26  of the companies' existence; (5) Defendants have been unable to locate key witnesses in the
27  matter; (6) contact information for management and supervisory employees is invalid; and
28  (7) Defendants have had difficulty locating personnel records. (Dkt. # 45 Ex. 1.) While Mr.

- 6 -

1 Alexander's statements may be true, Defendants have not demonstrated that any of this 2 prejudice would *result from allowance of the amendment*. Indeed, it appears that the 3 majority of the hardship set forth by Defendants existed before Plaintiff sought to amend the 4 Complaint and is a result of conditions external to Plaintiff's proposed amendment.

5 Additionally, Defendants have been aware of the retaliation charges since as early as 6 2004 (*see* Dkt. # 45 Ex. 6), and have been aware of the resulting reasonable cause 7 determination letters providing the basis for Plaintiff's proposed class retaliation amendment 8 since September of 2006 (*see, e.g.*, *id.* Ex. 7 ("Like and related and growing out of the 9 Commission's investigation is evidence that Respondents retaliated against other employees 10 for engaging in protected activity by complaining of and/or otherwise opposing unlawful 11 employment practices.")). Presumably, Defendants could have taken steps to preserve 12 evidence and contact information that might otherwise have been lost or difficult to locate 13 given the shifting nature of the business entities. Defendants have failed to demonstrate the 14 undue prejudice necessary to deny a motion for leave to amend.

15 Finally, Plaintiff filed its Motion for Leave to Amend shortly after the parties 16 exchanged initial disclosure statements (*see* Dkt. ## 32, 33) and before any significant 17 discovery had been conducted by either party. Plaintiff's proposed amendment seeks to add 18 a class retaliation claim composed of two individuals (Mr. Netzel and Ms. Hartley) whom 19 Plaintiff originally alleged experienced retaliation, two individuals (Mr. Dupoux and Ms. 20 Nagel) whom Plaintiff originally alleged were subjected to discrimination, one individual 21 (Blakley) who was not included in the original Complaint, and a class of unknown 22 individuals. Given the early posture of the case and the significant overlap in relevant parties 23 and issues, the risk of undue prejudice to Defendants in the discovery process is also 24 minimal. *See Lee v. Regents of Univ. Of Nev.*, 113 F.3d 1241, *2 (9th Cir. 1997) ("[A]t such 25 an early state in the litigation, long before the court set a trial date or even a pretrial 26 conference, allowing [the plaintiff] to amend his complaint would not have prejudiced the 27 defendant.") (citing *DCD Programs*, 833 F.2d at 187-88).

28   **C.**  **Undue Delay**

This Circuit has made clear that "'undue delay by itself is insufficient to justify denying a motion to amend.'" *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712-13 (9th Cir. 2001) (quoting *Bowles v. Reade*, 198 F.3d 757, 758 (9th Cir. 1999)); *see DCD Programs*, 833 F.2d at 187 (same). "'Only where prejudice is shown or the movant acts in bad faith are courts protecting the judicial system or other litigants when they deny leave to amend a pleading.'" *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981) (quoting *Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973)); *see Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Prejudice is the touchstone of the inquiry under rule 15(a).") (quotation omitted).

Defendants argue that Plaintiff unduly delayed in seeking its proposed amendment by seeking leave to amend approximately eight months after the original Complaint had been filed.[2] After service was effectuated upon Defendants on June 27, 2008, Defendants sought and received multiple extensions of time to answer the Complaint. (*See* Dkt. ## 8, 14.) Defendants eventually filed their preliminary answer on August 25, 2008 (Dkt. # 19), and they filed an amended answer on September 10, 2008 (Dkt. # 23). On September 4, 2008, this case was reassigned to the undersigned, who was a newly-appointed judge to the District. (*See* Dkt. # 22.) As a result of a scheduling conflict with the Court, the Rule 16 case management conference was delayed until December 5, 2008. After the Rule 16 conference

---

[2] Much of Defendants' argument revolves around unsupported allegations that the EEOC delayed in all stages of investigating and initiating this action. (*See* Dkt. # 45 at 7-10.) Consistent with these arguments, Defendants contend that the "equitable doctrine of laches bars the proposed Amended Complaint because the EEOC's unexcused or unreasonable delay has prejudiced Defendants." (*Id.* at 7.) Defendants also contend that the doctrine of laches should be applied because Plaintiff's delay has resulted in "unfairly accentuated potential monetary damages." (*Id.* at 10.) While the Court recognizes that the affirmative defense of laches may be applied to EEOC enforcement actions, *see E.E.O.C. v. Alioto Fish Co., Ltd.*, 623 F.2d 86, 88-89 (9th Cir. 1980) ("Laches, an equitable bar to an action on the ground of unexcused or unreasonable prejudicial delay, may be used as a defense to a Title VII action."), Defendants' invocation of the defense in opposing leave to amend is improper because laches is a highly factual affirmative defense (*see* Fed. R. Civ. P. 8(c)(1)) and because neither party has presented sufficient evidence for the Court to resolve the matter.

- 8 -

had been conducted, and in accordance with the parties' proposed case management order, the Court set a February 6, 2009, deadline for amending pleadings. (*See* Dkt. ## 28, 30.) Plaintiff's Motion for Leave to Amend was filed shortly after the case management conference and within the time period proposed by the parties and permitted by the Court's Case Management Order. *See Toungate v. Konica Minolta Bus. Solutions, USA, Inc.*, No. C08-0423RL, 2009 WL 596597, at *6 (W.D. Wash. Mar. 9, 2009) ("Although the manner in which plaintiffs have chosen to pursue their case is inefficient and somewhat befuddling, the Court cannot say that the delay is undue since they have met the Court-imposed deadline."); *Humiston v. Nationwide Mut. Fire Ins. Co.*, No. 05-3216-PHX-JAT, 2006 WL 1794769, at *2 (D. Ariz. June 27, 2006) (finding no undue delay and noting that the defendant complied with the time frame for amending pleadings in the court's Rule 16 Scheduling Order).[3]

Given the early posture of this case and the delays attributable squarely to the Court and to Defendants, it is unclear how Plaintiff unduly delayed in seeking the proposed amendment or how the proposed amendment would unduly prejudice Defendants. Because Defendants have not demonstrated that the proposed amendment would be futile, that undue prejudice would result by virtue of allowing the proposed amendment, or that the proposed amendment is a result of Plaintiff's undue delay, Plaintiff's Motion for Leave to Amend is granted.

---

[3]Although the burden to demonstrate undue delay falls on Defendants, Plaintiff explains the reasons for its delay in seeking the amendment:

> In responding to discovery propounded by Defendants, the EEOC interviewed the charging parties and class members and concluded, because of the systemic nature of the retaliation against Dupoux, Blakley, and Nagel, the EEOC had sufficient evidence to pursue a class retaliation claim consistent with the letter of determination issued on September 29, 2006.

(Dkt. # 49 at 5.)

## II.     Defendants' Motion to Stay the Action and Compel Arbitration

Defendants principally argue that pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-4, this Court should stay the enforcement proceedings and compel arbitration of Defendants' former employees who are named as victims in the EEOC's Complaint. (Dkt. # 50 at 2-5.) Plaintiff, however, argues that the FAA is inapplicable to these proceedings and that in *Waffle House*, the Supreme Court "unequivocally disposed of the issues raised in Defendants' Motion." (Dkt. # 48 at 2.)

The FAA governs the allocation of authority between courts and arbitrators. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000); *see also* 9 U.S.C. §§ 1-4. By its terms, section 3 of the FAA "leaves no place for the exercise of discretion by a district court but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has" been reached. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991) ("The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms.").

In *Waffle House*, the Supreme Court addressed "whether an agreement between an employer and an employee to arbitrate employment-related disputes bars the [EEOC] from pursuing victim-specific judicial relief, such as backpay, reinstatement, and damages, in an enforcement action . . . ." 534 U.S. at 282. In that case, sixteen days after beginning work as a grill operator at one of Waffle House's restaurants, Eric Baker, who had signed an arbitration agreement with his employer, suffered a seizure at work and was discharged.[4] *Id.* at 283. Although Baker filed a timely charge of discrimination with the EEOC, at no time

---

[4] While *Waffle House* is an Americans with Disabilities Act ("ADA") case, the Court made clear that "Congress has directed the EEOC to exercise the same enforcement powers, remedies, and procedures that are set forth in Title VII of the Civil Rights Act of 1964 when it is enforcing the ADA's prohibition against employment discrimination on the basis of disability." 534 U.S. at 285-86.

- 10 -

1  during the seven years after his termination did he initiate judicial or arbitration proceedings.
2  *Id.* After conducting an investigation and an attempt to conciliate, the EEOC filed an
3  enforcement action against Waffle House seeking relief, which included victim-specific
4  backpay, reinstatement, compensatory damages, and punitive damages. *Id.* at 283-84.
5  Waffle House filed a petition, pursuant to the FAA, requesting that the court stay the EEOC's
6  suit and compel arbitration based on the arbitration agreement signed by Baker. *Id.* at 284.

7  The Supreme Court concluded that Baker's arbitration agreement did not, in any way,
8  hinder the EEOC's ability to prosecute the charge of discrimination, including the right to
9  seek victim-specific relief in the form of reinstatement, backpay, and compensatory or
10 punitive damages. *Id.* at 284-97. The Court reasoned that:

> [T]he EEOC takes the position that it may pursue a claim on the employee's behalf even after the employee has disavowed any desire to seek relief. The statute clearly makes the EEOC the master of its own case and confers on the agency the authority to evaluate the strength of the public interest at stake. Absent textual support for a contrary view, it is the public agency's province – not that of the court – to determine whether public resources should be committed to the recovery of victim specific relief. And if the agency makes that determination, the statutory text unambiguously authorizes it to proceed in a judicial forum.

*Id.* at 291-92. The Court narrowed its holding, however, stating:

> [I]t is an open question whether a settlement or arbitration judgment would affect the validity of the EEOC's claim or the character of relief the EEOC may seek. The only issue before this Court is whether the fact that Baker has signed a mandatory arbitration agreement limits the remedies available to the EEOC.

21 *Id.* at 297. This "open question" was not addressed by the Court because "Baker [had] not
22 sought arbitration of his claim, nor [was] there any indication that he [had] entered into
23 settlement negotiations with [Waffle House]." *Id.*

24 Here, Defendants "seek the arbitration of the employee[s'] individual claims" as set
25 forth in EEOC's Complaint and request that "the EEOC enforcement action be stayed
26 pending the conclusion of the arbitration of the employee[s'] individual claims." (Dkt. # 50
27 at 1, 2 n.1.) Even assuming that valid arbitration agreements exist between Defendants and
28 their former employees named in the Complaint – a matter that the parties dispute – pursuant

- 11 -

to *Waffle House*, this Court is unable to compel arbitration or to stay the matter under the FAA, as it is undisputed that the only plaintiff in this action is the EEOC. There is also no indication in the record that any of the former employees of Defendants named in the Complaint have or are pursuing private claims either in a judicial forum, through arbitration, or by settlement, and none of the former employees have intervened in this action.

Defendants argue that *Waffle House* "expressly left open the right to enforce arbitration of [individual employee's claims]," apparently even if the employees have declined to pursue private legal action against their former employers. (Dkt. # 50 at 2.) While the FAA provisions might be applicable should the former employees seek to intervene or assert their own individual claims in a judicial forum,[5] *Waffle House* foreclosed the applicability of the FAA in an enforcement action involving only the EEOC, regardless of whether the EEOC asserts victim-specific relief. 534 U.S. at 289 ("The FAA does not mention enforcement by public agencies; it ensures the enforceability of private agreements to arbitrate, but otherwise does not purport to place any restriction on a nonparty's choice of judicial forum.").

Defendants' Motion is therefore denied because: (1) the Court cannot compel arbitration of the former employees' claims when none of the individual employees are parties to this action; and (2) the Court, pursuant to *Waffle House*, may not stay the proceedings and could not order a stay even if some of the former employees had intervened.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to Amend (Dkt. # 35) is **GRANTED**.

---

[5]As a collateral matter, in *Waffle House* the Court did not address the question of whether an intervening plaintiff in an EEOC enforcement action must arbitrate his or her specific claims pursuant to an arbitration agreement because the aggrieved party in *Waffle House* never intervened in the EEOC's action. Likewise, because no parties have intervened in this action, the Court declines to reach the issue.

1  **IT IS FURTHER ORDERED** directing the Clerk of the Court file the lodged
2  proposed First Amended Complaint (Dkt. # 36).
3  **IT IS FURTHER ORDERED** that Defendants' Cross-Motion to Dismiss and to
4  Enforce Arbitration Agreements and Compel Arbitration (Dkt. # 45) is **DENIED**.
5  DATED this 21st day of April, 2009.

*G. Murray Snow*
G. Murray Snow
United States District Judge